1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    BANNEKER PARTNERS, LLC,              No.  2:23-mc-00110-WBS-AC

12              Plaintiff,

13         v.                              ORDER

14    MILK MOOVEMENT, INC., a foreign
      Corporation, and MILK MOOVEMENT,
15    LLC, a Delaware Limited Liability
      Company,
16
                 Defendants.
17

18         This matter is before the court on Milk Moovement's motion to compel responses to a

19    Fed. R. Civ. P. 45 third-party subpoena.  ECF No. 16.  This discovery motion was referred to the

20    undersigned pursuant to E.D. Cal. R. 302(c)(1).  This motion was filed as a separate

21    miscellaneous case, but is related and closely tied to the ongoing dispute in Ever.Ag LLC v. Milk

22    Moovement, 2:21-cv-2233 (E.D. Cal. 2021)("Underlying Action").[1]  Upon review of the motion

23    and arguments, the court DENIES the motion to compel.

24                         I.    Relevant Background

25         In the underlying action, Ever.Ag sued for alleged trade secrets misappropriation under

26    the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1837, and the California Uniform Trade

27    _____

28    [1]  Ever.Ag LLC is formerly known as Dairy, LLC; the docket reflects a notice of name change
      filed March 14, 2023.  ECF No. 265.

Secrets Act, as well intentional interference with contractual relations. Underlying Action at ECF No. 48 (First Amended Complaint). Defendant, Milk, has filed Second Amended Counterclaims (id. at ECF No. 262), which face a pending motion to dismiss (id. at ECF No. 266) and a pending motion to strike (id. at ECF No. 270), both pending before the District Judge. The central issue surrounding these amended counterclaims is one that has been the subject of much active litigation in the underlying action: whether Milk can assert antitrust-type counterclaims against Ever.Ag. See id., ECF No. 266-1 at 10.

Banneker Partners, LLC is a private equity firm and the majority shareholder of Ever.Ag, but it is not Ever.Ag's parent company. ECF No. 22 at 2-3. On January 10, 2023, Milk served a subpoena on Banneker seeking documents and deposition testimony which Milk characterizes as related to (1) Ever.Ag's trade secret claims against Milk, (2) Milk's affirmative defenses to those claims, including its Thirteenth Affirmative Defense ("Dairy's claims are barred, in whole or in part, due to its own conduct, acts, and omissions, including the conduct, acts, and omissions alleged in MMI's Counterclaims below" (Underlying Action at ECF No. 111 at 22)), and (3) Milk's antitrust counterclaims, which were then pending as part of Milk's motion for leave to amend its counterclaims. Curran Decl. 1 Ex. A., (Subpoena). On January 25, 2023, Banneker served Responses and Objections to the Subpoena. Id. at Ex. B. Banneker filed a motion to quash the Subpoena in the Northern District of California on February 15, 2023, thereby initiating this action. The Northern District of California transferred this action to this Court on March 10, 2023.

The subpoena at issue requests both deposition testimony and document production. The deposition testimony topics are listed as follows:

> 1. Your interactions with Milk, including but not limited to any potential transaction, investment, and/or acquisition involving Milk.
>
> 2. Your relationship with Dairy, including but not limited to Your ownership interest in Dairy and Your ability and/or right to exercise control over Dairy.
>
> 3. Your relationship with Dairy Farmers of America ("DFA").
>
> 4. Dairy's relationship with DFA, including but not limited to DFA's ownership and/or control of Dairy.

5. Dairy's practices, policies, strategies, and/or procedures regarding the enforcement of any confidentiality and/or other restrictive provisions of Dairy's contracts with its customers.

6. Dairy's practices, policies, strategies, and/or procedures regarding the prevention of Dairy's customers from acquiring services from a competitor of Dairy.

7. Dairy's market share, including but not limited to Dairy's business strategy for maintaining and/or increasing its market share.

8. Dairy's business strategy and decisionmaking [sic.] regarding competing against other market participants.

9. Any purported trade secrets of Dairy that Dairy alleges Milk misappropriated.

10. The basis of Dairy's allegation that Milk misappropriated Dairy's trade secret(s).

11. The basis of Dairy's allegation that Milk accessed and/or received Dairy's purported confidential information.

12. Your document-retention policies.

Curran Decl. 1 Ex. A.  The subpoena contains the following requests for production:

1. All documents regarding Milk, including but not limited to any potential transaction, investment, and/or acquisition involving Milk.

2. Documents sufficient to show Your ownership interest in Dairy.

3. Documents sufficient to show Your ability and/or right to exercise control of Dairy.

4. All documents regarding Your relationship with DFA.

5. All documents regarding Dairy's relationship with DFA, including but not limited to DFA's ownership and/or control of Dairy.

6. All documents regarding Dairy's practices, policies, strategies, and/or procedures regarding the enforcement of any confidentiality and/or other restrictive provisions of Dairy's contracts with its customers.

7. All documents regarding Dairy's practices, policies, strategies, and/or procedures regarding the prevention of Dairy's customers from acquiring services from a competitor of Dairy.

8. All documents regarding Dairy's market share, including but not limited to all documents regarding Dairy's business strategy for maintaining and/or increasing its market share.

////

3

9. All documents regarding Dairy's business strategy and decisionmaking [sic.] regarding competing against other market participants.

10. All documents regarding any purported trade secrets of Dairy that Dairy alleges Milk misappropriated.

11. All documents regarding Dairy's allegation that Milk accessed and/or received Dairy's purported confidential information.

12. All documents regarding this lawsuit, including the decision by Dairy to file this lawsuit.

13. Documents sufficient to show Your document-retention policies, including autodelete functions and/or data-backup functions and/or capabilities.

Id.

## II.   Motion

In the joint statement filed with the motion to compel, Milk acknowledges that "a discovery stay is presently in place with respect to discovery targeted exclusively to Milk Moovement's antitrust counterclaims." ECF No. 22 at 3. However, Milk argues that compliance with the subpoena should be compelled because "no stay is or ever has been in effect with respect to Milk Moovement's ability to take discovery on its affirmative defenses—which have been in the case for a full year since last April. (ECF 79.) There is categorically no reason why Banneker should not be ordered to produce documents and testimony immediately." Id. In opposition, Banneker argues that the motion should be denied for three reasons: "(1) the Subpoena seeks antitrust-related discovery despite this Court's order staying antitrust discovery pending the outcome of Dairy's motions to strike and dismiss the antitrust counterclaims, (2) this Court has already twice found that antitrust discovery is not relevant to Milk Moovement's affirmative defenses, including its Thirteenth Affirmative Defense, and (3) regardless of the current bar on antitrust discovery, the Subpoena is unduly burdensome because it (i) is overbroad and seeks material that could be obtained from the litigation parties and (ii) seeks Banneker's confidential information." Id. at 3-4.

////

////

4

1

### III.    Analysis

2

A. <u>Legal Standard</u>

3      Federal Rule of Civil Procedure 45 allows a party to a lawsuit to serve a subpoena that

4  commands a non-party to "produce documents, electronically stored information, or tangible

5  things ..." Fed. R. Civ. P. 45(a)(1)(C).  A court must modify or quash such a subpoena that fails

6  to allow a reasonable time to comply, requires a person to travel more than 100 miles (except for

7  trial within the state), requires disclosure of privileged or other protected materials, or subjects a

8  person to undue burden.  <u>See</u> Fed. R. Civ. P. 45(d)(3)(A) (i-iv).  Rule 45 further provides that a

9  court may modify or quash a subpoena when the subpoena requires the disclosure of a "trade

10  secret or other confidential research, development, or commercial information."  <u>See</u> Fed. R. Civ.

11  P. 45(d)(3)(B).

12      The Federal Rules limit the scope of subpoenas by the relevance standards set forth in

13  Federal Rule of Civil Procedure 26(b)(1) ("[p]arties may obtain discovery regarding any

14  nonprivileged matter that is relevant to any party's claim or defense"), and the considerations of

15  burden and expense set forth in Federal Rules of Civil Procedure 26(b)(2) and 45(c)(1).  "In

16  evaluating whether a subpoena is unduly burdensome, the court balances the burden imposed on

17  the party subject to the subpoena by the discovery request, the relevance of the information

18  sought to the claims or defenses at issue, the breadth of the discovery request, and the litigant's

19  need for the information."  <u>Wahoo Int'l, Inc. v. Phix Doctor, Inc.</u>, No. 13CV1395-GPC BLM,

20  2014 WL 3573400, at *2 (S.D. Cal. July 18, 2014) (internal citations omitted).  Rule 26 also

21  includes an explicit proportionality requirement; discovery must be proportional to the needs of

22  the case.  Fed. R. Civ. P. 26(1).  This proportionality limitation applies to Rule 45 subpoenas to

23  non-parties.  <u>St. Jude Medical S.C., Inc. v. Janssen-Counotte</u>, 305 F.R.D. 630, 637 (D. Ore.

24  2015).  Moreover, non-parties subject to a subpoena duces tecum "deserve extra protection from

25  the courts."  <u>High Tech Medical Instrumentation v. New Image Indus.</u>, 161 F.R.D. 86, 88 (N.D.

26  Cal. 1995) (citing <u>United States v. Columbia Broadcasting System</u>, 666 F.3d 364, 371-72 (9th

27  Cir. 1982).

28  ////

B.  The Subpoena Improperly Targets Stayed Antitrust Discovery

A review of the subpoena at issue makes clear that it largely targets discovery related to the antitrust counterclaims, which both parties acknowledge is a discovery topic that is stayed pending the District Judge's ruling on related pending motions.  See Underlying Action at ECF 303.  Deposition topics 1, 2, 3, 4, 5, 6, 7, and 8, as well as Requests for Production 1, 2, 3, 4, 5, 6, 7, 8, and 9 are targeted at Ever.Ag's alleged anticompetitive practices and are clearly tied to the stayed discovery topic.  Any relationship between the proposed subpoena and the Thirteenth Affirmative Defense does not support subjecting non-party Banneker to antitrust discovery at this juncture.  The undersigned expressly stated in a discovery conference held in the underlying case that it would not address discovery as to this affirmative defense until a ruling is issued by the District Judge.  ECF No. 22-6 at 6-7.

This approach serves the interests of judicial economy.  Indeed, Milk "acknowledges that Your Honor stayed discovery of similar requests pending resolution of Dairy's motion to dismiss and motion to strike Milk Moovement's Second Amended Counterclaims" but argues that "at a minimum, Banneker should be ordered to immediately (i) search for, locate, and prepare for production all documents responsive to the Subpoena so those documents can be produced immediately upon the lifting of the stay, and (ii) provide three dates for its Rule 30(b)(6) deponent during the weeks of May 8 and 15."  ECF No. 22 at 17.  While the undersigned recognizes Milk's disagreement with this court's prior decisions, it should be plain to all involved that the suggested course of action is inefficient and unduly burdensome.  Thus, the court will not compel compliance with the subpoena at this time.

C.  Discoverable Documents Can be Obtained from Party

Except for questions related to Banneker's document retention policies, the remaining topics in the subpoena (deposition topics 9, 10, and 11 and Request for Production topics 10, 11, and 12) are related to Ever.Ag's motivation in bringing the underlying action and such information can be obtained from Ever.Ag itself.  It would be unduly burdensome to require s a non-party to produce that which is readily obtainable from a party.  Thus, responses will not be

////

1  compelled.  The remaining questions having to do with Banneker's document retention policies

2  are not argued by either party and will not be compelled.

3                              **IV.        Conclusion**

4          For all reasons set forth above, the motion to compel (ECF No. 22) is DENIED without

5  prejudice to a renewed motion following a ruling by the District Judge on the pending motion to

6  dismiss and motion to strike (ECF Nos. 266, 270).

7          IT IS SO ORDERED.

8  DATED: May 3, 2023

9                                         _____

10                                        ALLISON CLAIRE
                                          UNITED STATES MAGISTRATE JUDGE