UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BANNEKER PARTNERS, LLC, | No. 2:23-mc-00110 WBS AC |
| Plaintiff, | |
| v. | ORDER |
| MILK MOOVEMENT, INC., a foreign Corporation, and MILK MOOVEMENT, LLC, a Delaware Limited Liability Company, | |
| Defendants. | |

This matter is before the court on Milk Moovement's motion to compel responses to a Fed. R. Civ. P. 45 third-party subpoena. ECF No. 27. This discovery motion was referred to the undersigned pursuant to E.D. Cal. R. 302(c)(1). This motion was filed as a separate miscellaneous case, but is related and closely tied to the ongoing dispute in Ever.Ag LLC v. Milk Moovement, 2:21-cv-2233 (E.D. Cal. 2021) ("Underlying Action").[1] Upon review of the motion and arguments, the motion is DENIED.

**I.   Relevant Background**

In the underlying action, Ever.Ag sued for alleged trade secrets misappropriation under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1837, and the California Uniform Trade

---

[1] Ever.Ag LLC is formerly known as Dairy, LLC; the docket reflects a notice of name change filed March 14, 2023. ECF No. 265.

1

Secrets Act, as well intentional interference with contractual relations.  Underlying Action at ECF No. 48 (First Amended Complaint).  Defendant, Milk, has filed Second Amended Counterclaims (id. at ECF No. 262), which Ever.Ag moved to dismiss (id. at ECF No. 266).  The central issue surrounding these amended counterclaims is one that has was the subject of much active litigation in the underlying action: whether Milk can assert antitrust-type counterclaims against Ever.Ag.  See id., ECF No. 266-1 at 10.  That issue has now been resolved in favor of inclusion of the counterclaims.  ECF No. 327.

      Banneker Partners, LLC is a private equity firm and the majority shareholder of Ever.Ag, but it is not Ever.Ag's parent company.  ECF No. 22 at 2-3.  On January 10, 2023, Milk served a subpoena on Banneker seeking documents and deposition testimony which Milk characterizes as related to (1) Ever.Ag's trade secret claims against Milk; (2) Milk's affirmative defenses to those claims, including its Thirteenth Affirmative Defense ("Dairy's claims are barred, in whole or in part, due to its own conduct, acts, and omissions, including the conduct, acts, and omissions alleged in MMI's Counterclaims below" (Underlying Action at ECF No. 111 at 22)); and (3) Milk's antitrust counterclaims, which were then pending as part of Milk's motion for leave to amend its counterclaims.  Curran Decl. 1 Ex. A., (Subpoena).  On January 25, 2023, Banneker served Responses and Objections to the Subpoena.  Id. at Ex. B.  Banneker filed a motion to quash the Subpoena in the Northern District of California on February 15, 2023, thereby initiating this action.  The Northern District of California transferred this action to this Court on March 10, 2023.

      On March 31, 2023, Milk filed a motion to compel (ECF No. 16) which the undersigned denied without prejudice because a discovery stay with respect to Milk's potential antitrust claims was in effect.  ECF No. 24.  Now that it is clear the antitrust claims are included in the case the stay is lifted, and Milk reinitiates portions of the discovery dispute and raises new issues via the motion to compel at bar.  ECF No. 27.

## II.    The Motion

Milk raises two categories of issues in is motion to compel: new issues, and issues previously addressed in the previously denied motion to compel.  First,  with respect to new

issues, Milk argues Banneker is attempting to impose arbitrary limits on the scope of its document collection by (1) refusing to collect documents from the files of Matthew McDonald, a Dairy/Ever.Ag Board member; (2) refusing to run as search terms Banneker's codenames for potential and actual acquisitions that are directly relevant to Milk' antitrust claims in the Ever.Ag v. Milk litigation; and (3) refusing to collect responsive text and instant messages from its custodians' personal devices.  ECF No. 32 at 3.

      Second, with respect to issues previously addressed, Milk seeks to compel responses to its Requests for Production ("RFPs"), Nos. 10-12, which it contends seek documents seek relevant information concerning Ever.Ag's reasons and motivation for bringing the underlying litigation, exclusive of documents in the possession of Ever.Ag itself.  ECF No. 32 at 3.

### III.   Analysis

#### A.   Legal Standard

      Federal Rule of Civil Procedure 45 allows a party to a lawsuit to serve a subpoena that commands a non-party to "produce documents, electronically stored information, or tangible things ..." Fed. R. Civ. P. 45(a)(1)(C).  A court must modify or quash such a subpoena that fails to allow a reasonable time to comply, requires a person to travel more than 100 miles (except for trial within the state), requires disclosure of privileged or other protected materials, or subjects a person to undue burden.  See Fed. R. Civ. P. 45(d)(3)(A) (i-iv).  Rule 45 further provides that a court may modify or quash a subpoena when the subpoena requires the disclosure of a "trade secret or other confidential research, development, or commercial information."  See Fed. R. Civ. P. 45(d)(3)(B).

      The Federal Rules limit the scope of subpoenas by the relevance standards set forth in Federal Rule of Civil Procedure 26(b)(1) ("[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense"), and the considerations of burden and expense set forth in Federal Rules of Civil Procedure 26(b)(2) and 45(c)(1).  "In evaluating whether a subpoena is unduly burdensome, the court balances the burden imposed on the party subject to the subpoena by the discovery request, the relevance of the information sought to the claims or defenses at issue, the breadth of the discovery request, and the litigant's

need for the information." Wahoo Int'l, Inc. v. Phix Doctor, Inc., No. 13CV1395-GPC BLM, 2014 WL 3573400, at *2 (S.D. Cal. July 18, 2014) (internal citations omitted).  Rule 26 also includes an explicit proportionality requirement; discovery must be proportional to the needs of the case.  Fed. R. Civ. P. 26(1).  This proportionality limitation applies to Rule 45 subpoenas to non-parties.  St. Jude Medical S.C., Inc. v. Janssen-Counotte, 305 F.R.D. 630, 637 (D. Ore. 2015).  Moreover, non-parties subject to a subpoena duces tecum "deserve extra protection from the courts."  High Tech Medical Instrumentation v. New Image Indus., 161 F.R.D. 86, 88 (N.D. Cal. 1995) (citing United States v. Columbia Broadcasting System, 666 F.3d 364, 371-72 (9th Cir. 1982).

B. Addition of Custodian Matthew McDonald

Milk seeks to add Matthew McDonald, who is one of three proposed Banneker custodians to sit on Ever.Ag's Board of Directors, to the list of agreed ESI custodians.  ECF No. 32 at 10.  Milk argues it only recently discovered McDonald's position on the board, which is why he was not one of the initially proposed and agreed to custodians.  Id.  Banneker argues that Milk has not established that McDonald has non-duplicative documents, that it is already producing as to the two other board members, and that the addition of McDonald as a custodian is burdensome.  Id. at 16.  The court agrees with Banneker.  Milk does not demonstrate that McDonald is likely to have unique information.  The court can identify no reason to compel McDonald's inclusion as a custodian; his mere presence as a member of Ever.Ag's board of directors is not sufficient, particularly where Banneker's two other Ever.Ag board members are already agreed custodians.  The fact that McDonald's custodial search could be de-duplicated to avoid duplicative production ignores the fact that by the court compelling his inclusion as a custodian the discovery costs and obligations on third-party Banneker significantly increase.  The court is not persuaded that his inclusion is necessary or proportionate and the motion to compel is DENIED on this point.

C. Codenames for Acquisitions as Search Terms

Milk and Banneker have been in negotiations regarding the use of acquisition "codenames" as search terms.  The most recent position of the negotiation is expressed in a footnote in the joint statement, in which Milk states that "Banneker's counsel then indicated that

4

1  Banneker might be amenable to using the code names as search terms if it could redact the
2  relevant code names in its production.  As Milk Moovement explained in response, Banneker's
3  proposal would be unworkable because (1) it would be difficult for anyone reviewing the
4  redacted documents to ascertain which potential Banneker acquisition the documents were
5  referring to without the code names, and (2) Milk Moovement's counsel almost certainly would
6  need to confirm the meaning of any code names used in deposition exhibits with the relevant
7  witnesses to ensure a clear record.  Milk Moovement stated that it would not object if Banneker
8  instead designated any documents in which code names appear as "Attorneys' Eyes Only" under
9  the Protective Order, but Banneker did not agree to that proposal."  ECF No. 32 at 11.

10        Banneker argues that Milk, by asking Banneker to identify its codenames as search terms,
11 is using the subpoena as an end-run around the prohibition on issuing interrogatories to third
12 parties.  The court agrees with Banneker.  "[A] Rule 45 subpoena cannot be used to require third
13 parties to respond to interrogatories[.]"  Turner v. Ralkey, No. 3:20-CV-5472-BHS-DWC, 2021
14 WL 135855, at *3 (W.D. Wash. Jan. 13, 2021).  The court disagrees with Milk that Banneker's
15 proposal is not workable or would cause confusion; it is easy enough to redact codenames and/or
16 replace actual codenames with substitutes (e.g. "Acquisition 1") to avoid confusion.  The court is
17 confident the parties can come to a mutually agreeable solution.  The motion on this point is
18 DENIED.

19     D.  Search of Personal Devices

20        The obligation to search and produce with respect to individuals' personal devices was
21 recently addressed in the Underlying Action.  Underlying Action at ECF No. 371 at 2.  Again
22 here, Milk has not made any showing that Banneker has possession of control over these devices.
23 ECF No. 32 at 11-12.  Nor has Milk done anything other than speculate that the personal devices
24 may have responsive information.  Id.  Accordingly, the court DENIES the motion on this point.

25     E.  Discoverable Documents Can be Obtained from Party (RFPs 10-12)

26        Milk seeks to compel responses to RFPs 10-12, which read as follows:

27        10. All documents regarding any purported trade secrets of Dairy that
              Dairy alleges Milk misappropriated.
28

11. All documents regarding Dairy's allegation that Milk accessed and/or received Dairy's purported confidential information.

12. All documents regarding this lawsuit, including the decision by Dairy to file this lawsuit.

ECF No. 32 at 33.

The undersigned already held that these topics are related to Ever.Ag's motivation in bringing the underlying action and such information can be obtained from Ever.Ag itself, and that it would be unduly burdensome to require a non-party to produce that which is readily obtainable from a party.  ECF No. 24.  Milk asks the court to revisit this ruling, asserting that it is only seeking non-duplicative documents and that Banneker is not a truly disinterested third party.  ECF No. 32 at 12-13.  The court is not convinced.  Milk's contention that Banneker has unique documents is speculative, and requiring Banneker to produce only unique documents would require Banneker to not only gather all responsive documents, but compare those documents to Ever.Ag's party production in order to determine which documents are unique.  The court declines to revisit this ruling and the motion to compel on this point is DENIED.

### IV.    Conclusion

For all reasons set forth above, the motion to compel (ECF No. 27) is DENIED.

IT IS SO ORDERED.

DATED: July 21, 2023

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE